UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Musleh Ludi and Nargis Sultana,

       Plaintiffs,

v.

Theresa Maylone and Jerome Wren.

       Defendants.

_____/

Case No. 16-14410

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [2]**

     This matter is before the Court on Defendants' motion to dismiss. (Docket 2.) Plaintiffs bring claims for violation of their civil rights pursuant to 42 U.S.C. section 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also brought state law claims for common law and statutory conversion. This action was removed from state court and the Court remanded Plaintiffs' state law claims. (Dkt. 4.) Plaintiffs filed a response to Defendant's motion and Defendant filed a reply. (Dkts. 7, 8.) In their response, Plaintiffs "abandoned" their procedural due process claims. (Pls.' Resp. 10, dkt. 7.) Thus, the only issues remaining in the current motion are Plaintiffs' Fourth Amendment claim and Defendants' claim of qualified immunity. The Court heard Defendants' motion on April 12, 2017.

**I.   FACTS**

     The actions at issue in this case arose during the investigation of a store known as Surma Grocery for alleged bridge card fraud in violation of the Supplemental Nutrition Assistance Program (SNAP).  (Compl. ¶ 11; Defs.' Mot. Dismiss, Ex. A, dkt. 2-2.) Plaintiffs

Musleh Ludi and Nargis Sultana are a married couple. (Compl. ¶ 5.) Although neither Plaintiff was ever involved in the operation of Surma Grocery and Plaintiff Musleh Ludi is employed full time working for a hotel, Plaintiff Ludi's brothers, Mukim Ludi and Mahtab Ludi, were involved in the operation of the grocery store. (Compl. ¶¶ 9, 10, 16.)

On September 23, 2014, the Michigan State Police executed a search warrant at 12237 Gallagher, Detroit, Michigan 48212 (the "Gallagher home"), in connection with the investigation of Surma Grocery, Mukim Ludi and others involved in operating the grocery store. (Compl. ¶¶ 6, 12.) The Gallagher home is owned by Plaintiff Musleh Ludi's nephew and at the time the warrant was executed, Plaintiffs were renting a portion of the Gallagher home and resided there. (Compl. ¶¶ 6, 7.) Other relatives of Plaintiffs resided there as well, including Mukim Ludi. (Compl. ¶¶ 8, 9.) Neither Plaintiff was the subject of the investigation for which the search warrant was issued. (Compl. ¶ 17.)

Defendants Theresa Maylone and Jerome Wren are employed by the Michigan State Police Department and were involved in executing the search warrant at the Gallagher property. (Compl. ¶¶ 2, 12.) When the search took place, both Plaintiffs and Mukim Ludi were present at the Gallagher home. (Compl. ¶ 13.) Plaintiffs allege that during the search, Defendants wrongfully seized property belonging to Plaintiffs that was located in rooms that "Defendants knew were rooms used/rented by Plaintiffs." (Compl. ¶ 18.) This property included currency of approximately $16,000 to $17,000, and other property owned by Plaintiffs. (Compl. ¶¶ 18, 19.)  Plaintiffs allege that despite their protests, Defendants have not returned their property. (Compl. ¶ 20.)

Plaintiffs allege that at all relevant times, Defendants knew that Plaintiffs had never been involved in any way with the operation of Surma Grocery. (Compl. ¶ 10.) Plaintiffs

also allege that Defendants were advised by Plaintiff Ludi that certain rooms in the house were used and occupied by Plaintiffs, and that Defendant Maylone interviewed Plaintiff Ludi during the execution of the search warrant, and Plaintiff Ludi advised her that he had nothing to do with Surma Grocery and was not affiliated with it in any way. (Compl. ¶¶ 14, 15.) Plaintiffs allege that during this search, "Defendants wrongfully seized property belonging to the Plaintiffs located in rooms that the Defendants knew were rooms used/rented by Plaintiffs (and so designated by the Defendants on their tabulation form), specifically the rooms designated in the evidence tabulation sheet as rooms 'B' and 'G.'"[1] (Compl. ¶ 18.) Plaintiffs ultimately allege that "there was nothing in the search warrant or warrants executed at the Gallagher property that authorized the Defendants to take property belonging to the Plaintiffs, who were not mentioned in the search warrant and the search warrant affidavits and were not the subject of the criminal investigation." (Compl. ¶ 21.)

## II. LEGAL STANDARD

Plaintiffs bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Sixth Circuit noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[1] At the hearing, Plaintiffs' counsel confirmed that these were misidentified in at least one place in the brief and/or complaint and that the rooms designated as Musleh Ludi's were "D" and "G". (Pl.'s Br. in Opposition Ex. 2, dkt. 7-3.)

*Estate of Barney v. PNC Bank, Nat'l Ass'n,* 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (citation omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed.R.Civ.P. 10(c)). "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335-36; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999)(documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint

and is central to the plaintiff's claim") (internal quotation marks and citations omitted).

## III. ANALYSIS

### A. Whether Plaintiffs' Fourth Amendment Claim Fails As A Matter Of Law

Defendants argue that because the seizure of the currency was authorized by a valid judicial warrant, Plaintiffs cannot claim a Fourth Amendment violation. Defendants point out that Plaintiffs do not claim that the warrant was not supported by probable cause. Instead, Plaintiffs appear to argue that the currency was not subject to seizure because Plaintiffs were not a subject of the investigation or warrant, the Defendants knew the currency belonged to Plaintiffs, and the currency was located in rooms Defendants knew were "used/rented" by Plaintiffs. (Compl. ¶¶ 14, 15, 18, 19, 37, 40.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "In general, like seizures of the person, seizures of personal property require probable cause." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002). "In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

Plaintiffs argue that the Fourth Amendment demands that a warrant specify which portions of a building are to be searched and they rely on an Eastern District of New York case to argue that "[i]f the officer knew, or should have known, that the building was a multi-

occupancy structure, the warrant must specify which unit is to be searched." *United States v. Wiggins*, 298 F.R.D. 75, 79 (E.D.N.Y. 2014) (citing *Maryland v. Garrison*, 480 U.S. 79, 86 (1987)). Yet Plaintiffs' claims do not contain allegations that the Defendants knew or should have known about the multiple residents at the Gallagher home prior to the actual execution of the search warrant.

As the Supreme Court explained in *Maryland v. Garrison*, "we must judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued. . . . [T]he discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Garrison*, 480 U.S. at 85. The warrant at issue identifies both the Gallagher residence and specifically identifies "[a]ny and all negotiable instruments including EBT cards, food stamp coupons, *United States Currency*, money orders, travelers cheques, bills of exchange, promissory notes and postal remittances." among the property to be searched for and seized. (Search Warrant, Defs.' Mot. Ex. B, dkt. 2-3 (emphasis added).) The Court finds that the warrant as issued was valid- indeed there is no claim that the warrant was not valid when issued.

The issue then is "whether the warrant was overbroad because it authorized the search of the *entire* premises" at 12237 Gallagher. *See Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000) (emphasis in original). "[A] search does not become invalid merely because some items not covered by a warrant are seized. Rather, an otherwise valid search becomes an impermissible general search only where the searching officers demonstrate a flagrant disregard for the limitations of a search warrant." *Marcilis v. Twp.*

*of Redford*, 693 F.3d 589, 602 (6th Cir. 2012). The Court in *Garrison* noted that "the validity of the search of respondent's apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Garrison*, 480 U.S. at 88.

Plaintiffs rely on several cases to argue that "[a]n officer must conduct a reasonable inquiry to determine if a building is a multi-occupancy structure." *Wiggins*, 298 F.R.D. at 80-81 (Multiple inquiries demonstrated that multiple families were living at the address, and a report "showing that the address was the probable current address of a family other than the defendant's, should have alerted the police to the fact that the house was a multi-occupancy structure."). In *Wiggins*, the court found that the "officers were or should have been on notice that the building had multiple apartments," the officers failed to "show probable cause to search the entire house" or "specify that probable cause existed to search defendant's apartment in particular," and ultimately held that the search warrant was invalid. *Id.* at 81. Yet even *Wiggins* points out that "[i]ndicia of whether a building is single or multi-resident includes visual surveillance, police records, public records, and utility company records." *Wiggins*, 298 F.R.D. at 78-79 ("Inside the hallway, [the officer] encountered a locked door to his left, leading to the first floor apartment, and a locked door in front of him, leading to the second floor apartment. These doors required a key of the type normally used in New York City to obtain entry to a private apartment in a multi-family residence."); *see also Garrison*, 480 U.S. at 85 n.10 ("Arguments can certainly be made that the police in this case should have been able to ascertain that there was more than one apartment on the third floor of this building. It contained seven separate dwelling units and it was surely possible that two of them might be on the third floor.").

The cases on which Plaintiff relies involved warrants for entire buildings, yet the buildings were divided into separate apartment or dwelling units. Plaintiffs' allegations do not contain similar indicia to those of the cases on which they rely. Plaintiffs' claims rely on allegations (some conclusory) that Defendants knew or should have know that multiple residents occupied the Gallagher house, such as:

> That the Defendants were advised by Plaintiff Ludi that certain rooms in the house were rooms used and occupied by the Plaintiffs and those rooms were designated on the Evidence Tabulation Sheet as rooms B and G. (Compl. ¶ 14.)

> That, additionally, Defendant Maylone, during the execution of the search warrant, interviewed Plaintiff Ludi, who advised her that he had nothing to do with Surma Grocery; that he was not affiliated with that store in any way. (Compl. ¶ 15.)

> . . . .

> That during the search of the Gallagher home, the Defendants wrongfully seized property belonging to the Plaintiffs located in rooms that the Defendants knew were rooms used/rented by Plaintiffs (and so designated by the Defendants on their tabulation form), specifically the rooms designated in the evidence tabulation sheet as rooms "B" and "G". (Compl. ¶ 18.)

> That from those rooms of the Plaintiffs ("B" and "G"), the Defendants, despite protests by the Plaintiffs, seized property belonging to the Plaintiffs, including currency of approximately $16,000.00 to $17,000.00 and other property owned by the Plaintiffs. (Compl. ¶ 19.)

> . . . .

> That while acting under color of state law, the Defendants wrongfully seized property owned by the Plaintiffs, knowing that they had no lawful right to take or seize property owned by the Plaintiffs (neither of whom was mentioned in the search warrant affidavit or search warrant). (Compl. ¶ 37.)

Plaintiffs are unable to provide case law similar to the specific facts here, and argue that discovery is necessary. Yet Plaintiffs' allegations lack the kind of indicia of multiple residences that existed in the cases on which they rely to argue that the search was overly

broad.

The parties have each submitted documents in support of their pleadings. Those documents were referenced in the complaint and include hand drawn maps of the Gallagher house, indicating rooms by letter, including "D" and "G"[2] and indicating common areas, such as bathroom, kitchen, and other areas identified by letter. Plaintiffs describe the home as "a large living space accommodating several families" (Pls.' Resp. 3, dkt. 7), even mentioning in their brief that "although the Gallagher property was not set up as an apartment building with separate mailboxes and entrances, it nevertheless was a multi-family building," admitting that "some areas such as kitchens and bathrooms were shared," yet "areas of the home such as bedrooms were personal living space for individual families." (Pls.' Resp. 7-8, dkt. 7.) Significant areas were used in common in the Gallagher home- there is no allegation of locked doors, separate entrances or separate or multiple kitchens, or any of the kinds of indicia of multiple-resident occupancy that was present in the cases on which Plaintiffs rely. *See e.g. U.S. v. Crumpton*, 824 F.3d 593 (6th Cir. 2016) ("The lack of indicia that the house included any separate living areas, along with the suggestion that Crumpton [defendant] used the front and back areas of the house, renders the government's belief that the house was a single residence reasonable.")

The Complaint and incorporated documents show the Gallagher home was occupied in common, and aside from Plaintiffs' statements that they used and/or occupied certain rooms and that the currency seized therein belonged to them, there is no indicia of multiple units that may have rendered the warrant or the search overbroad. *See e.g., Mena*, 226

---

[2] As mentioned above, misidentified in areas of the Complaint and Plaintiff's response as either "B" and "G", or "D" and "J". (Compl. ¶¶ 14, 18, 19; Pls.' Resp. 3.)

F.3d at 1038 (quoting *United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985) ("a warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect")).

The Court will grant Defendants' motion to dismiss on this issue. Yet even if the Court were to deny Defendants' motion on this basis, Plaintiffs have not alleged facts that would show that Defendants are not entitled to qualified immunity.

## B. Whether Defendant Is Entitled To Qualified Immunity

Defendants argue that they are entitled to qualified immunity and that *Mena v. City of Simi Valley*, a case on which Plaintiffs rely, supports the application of qualified immunity in this case. *See generally Mena*, 226 F.3d 1031. To defeat qualified immunity, Plaintiff must show both that the official's conduct violated a constitutional right and that the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Silberstein v. City of Dayton*, 440 F.3d 306, 310 (6th Cir. 2006) (citing *Saucier*, 533 U.S. at 201). The two inquiries necessary for a qualified immunity analysis may be tackled in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The question of qualified immunity should be resolved as early as possible in litigation. *Id.* at 232. Here, the Court considers "whether the facts alleged show a violation of a clearly established constitutional law . . . ." *Silberstein*, 440 F.3d at 310.

As set forth above, there are no allegations that the warrant was not valid when issued. Plaintiffs' argument then, includes an allegation that the warrant was overbroad. As

the court noted in *Mena*, "Defendants reasonably could have believed, at the time the warrant was issued that there was probable cause to search the entire premises." *Mena*, 226 F.3d at 1037-38 ("[t]here is absolutely no evidence in the record sufficient to create a genuine issue of material fact that either [officer] . . . knew or should have known prior to the application for the warrant that the . . . residence was a multi-unit dwelling."). The *Mena* court held "as a matter of law that Defendants are entitled to qualified immunity with regard to the claim that the search warrant for [that specific address] was overbroad," and granted summary judgment in favor of all the defendants. *Id.* at 1038. The Court finds that Defendants are entitled to qualified immunity with regard to any claim that the search warrant was overbroad. Finally, Plaintiffs' allegations appear to encompass an allegation that the search itself– the execution of the warrant– was overbroad because "Defendants wrongfully seized property owned by the Plaintiffs, knowing that they had no lawful right to take or seize property owned by the Plaintiffs (neither of whom was mentioned in the search warrant affidavit or search warrant.)" (Compl. ¶ 37.)

Plaintiffs allege that at a point in the execution of the search, Plaintiff Ludi advised Defendants that "certain rooms in the house were rooms used and occupied by the Plaintiffs" and that during the search the Defendant seized property belonging to Plaintiffs that was located in rooms that "Defendants knew were rooms used/rented by Plaintiffs." (Compl. ¶ 18.) Plaintiffs have not plead facts to defeat Defendants' qualified immunity claim. Plaintiffs have not plead facts from which a reasonable jury could determine that it was unreasonable for Defendants to continue the search of the areas which were allegedly in use and occupied by Plaintiffs. Plaintiffs admit that they have been able to find no case law clearly on point with this set of facts.

As set forth above, aside from Plaintiffs' notification to the Defendants that one or more of the rooms in the Gallagher home "were rooms used and occupied by the Plaintiffs," no indicia has been plead from which the officers were put on notice or should have known that they were searching a multi-family residence or that their searches of rooms "D" and/or "G", and subsequent seizure of items identified on the search warrant from those rooms was unreasonable. Despite the officers' indication on the Evidence Tabulation Sheet that the items marked with an asterisk indicate "Musleh Uddin Ludi Room" (Pls.' Resp. Ex. 2, dkt. 7-3), this was a response to Plaintiff Ludi advising Defendants "that certain rooms in the house were rooms used and occupied by the Plaintiffs and those rooms were designated on the Evidence Tabulation Sheet as rooms B (sic) and G." (Compl. ¶ 14.) Again, there is a dearth of allegations from which it may be concluded that this factual situation is analogous to those cases cited by Plaintiffs, which involved multiple-unit residences.

The Court cannot find that the officers violated a clearly established constitutional right. Defendants are entitled to qualified immunity.

## IV.  RECOMMENDATION

For the reasons set forth above the Court GRANTS Defendants' motion to dismiss (dkt. 2) as to Plaintiffs' Fourth Amendment claim. The Court DISMISSES Plaintiffs' Fourth Amendment claims, the procedural due process claims, and Plaintiffs' Complaint.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 25, 2017

12

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 25, 2017, by electronic and/or ordinary mail.

_s/Kelly Winslow for_____
Carol J. Bethel, Case Manager